## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

D.D.,

    Plaintiff,

         v.

STOCKTON UNIVERSITY, et al.,

    Defendants.

Civil No. 18-13506(RMB/JS)

**OPINION**

**APPEARANCES:**

FUGGI LAW FIRM, P.C.
By: Robert R. Fuggi, Jr. Esq.; Jonathan M. Penney, Esq.;
    Peter S. Pascarella, Esq.
47 Main Street, P.O. Box 1808
Toms River, New Jersey 08754
    Counsel for Plaintiff D.D.

OFFICE OF THE ATTORNEY GENERAL OF NEW JERSEY
By: Michael R. Sarno, Deputy Attorney General
R.J. Hughes Justice Complex
25 Market Street, P.O. Box 116
Trenton, New Jersey 08625
    Counsel for Defendants Stockton University and
    the Stockton University Board of Trustees

GREENBAUM, ROWE, SMITH & DAVIS, LLP
By: John D. North, Esq.; Jemi Goulian Lucy, Esq.;
    Irene Hsieh, Esq.
P.O. Box 5600
Woodbridge, New Jersey 07095
    Counsel for Defendants Stockton University and
    the Stockton University Board of Trustees

ZARWIN BAUM DEVITO KAPLAN SCHAER TODDY, P.C.
By: Timothy P. Mullin, Esq.
309 Fellowship Road, Suite 200
Mt. Laurel, New Jersey 08054
    Counsel for Defendant Pi Kappa Phi Fraternity, Inc.

LAW OFFICE OF DEBRA HART
By: Cindy B. Shera, Esq.
303 Fellowship Road, Suite 300
Mount Laurel, New Jersey 08054
     Counsel for Defendants Michael Colandrea,
     Sherie Reid-Colandrea, and Katie Colandrea

BENNETT, BRICKLIN & SALTZBURG LLC
By: Michael Dolich, Esq.
6000 Sagemore Drive, Suite 6103
Marlton, New Jersey 08053
     Counsel for Defendants Amy Tomm (deceased)
     and Yin Ben Tomm


**RENÉE MARIE BUMB**, UNITED STATES DISTRICT JUDGE:

Plaintiff D.D. ("Plaintiff") brings this action against

Defendants Stockton University ("Stockton"), the Stockton

University Board of Trustees (the "Stockton Board")(together with

Stockton, the "Stockton Defendants"), the Pi Kappa Phi

Fraternity, Inc. ("PKP"), Katie Colandrea, Michael Colandrea, and

Sherie Reid-Colandrea (the "Colandrea Defendants"), and Yin Ben

Tomm and Amy Tomm (the "Tomm Defendants")(collectively,

"Defendants"), in relation to a series of alleged sexual assaults

during Plaintiff's time as a student at Stockton University.[1]

Plaintiff alleges that these sexual assaults occurred in October

2012 at the off-campus PKP fraternity house in Egg Harbor City,

---

[1] This is the Court's second decision resolving various motions
to dismiss in the nine related "Stockton cases" currently pending
before this Court.  This Court's Opinion contains substantially
similar reasoning to the prior decision issued in <u>D.N. v.
Stockton Univ.</u>, Civ. No. 18-11932 (RMB/JS), 2019 WL 2710500
(D.N.J. June 28, 2019).

New Jersey, and in December 2015 at the Colandrea family's house in Barnegat, New Jersey.

Plaintiff's Complaint (the "Complaint")[Dkt. No. 1] asserts causes of action under Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681, et seq. (Counts 1-2), Section 1983 of the Civil Rights Act, 42 U.S.C. § 1983 (Counts 3-4), the Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act, 20 U.S.C. § 1092 (the "Clery Act") and Title IV of the Higher Education Act of 1965, 20 U.S.C. § 1070, et seq. (the "HEA")(Counts 5-12),[2] the Drug-Free Schools and Communities Act Amendments of 1989, 20 U.S.C. § 1011 (the "DFSCA")(Count 13), personal injury tort claims (Counts 14-21), as well as various derivative claims and theories of liability (Counts 22-35).

This matter now comes before the Court upon Motions to Dismiss, filed by all Defendants (other than the Tomm Defendants)

---

[2] In response to Defendants' Motions to Dismiss, Plaintiff conceded that the Clery Act does not allow for a private cause of action and voluntarily withdrew "those pertinent counts of the complaint."  See Plaintiff's Brief in Opposition to the Motions to Dismiss ("Pl.'s Opp. Br.")[Dkt. No. 54], at 52. Therefore, the Court assumes that Defendant voluntarily dismisses Counts 5-12 and will not address those claims in this Opinion. Additionally, the Court will not address Count 13, because DFSCA also does not create a private right of action. See Stevenson ex rel. Stevenson v. Martin Cty. Bd. of Educ., 3 F. App'x 25, 35 (4th Cir. 2001).

(collectively, the "Moving Defendants").[3]  [See Dkt. Nos. 37, 38,

39].  Although the Court accepts all of Plaintiff's disturbing

allegations as true for purposes of these motions, the Court is

constrained by legal precedent mandating dismissal.  For the

reasons set forth herein, Defendants' Motions to Dismiss will be

granted, and Plaintiff's claims against the Moving Defendants

will be dismissed, without prejudice.  The Court, however, will

allow Plaintiff thirty (30) days to file an amended complaint,

addressing the deficiencies discussed in this Opinion.


## I.    **FACTUAL BACKGROUND**

Plaintiff's Complaint alleges that she was the victim of

sexual misconduct during her time at Stockton, including at least

two sexual assaults.  First, Plaintiff alleges that she was

subjected to sexually inappropriate behavior at two parties

hosted at PKP's off-campus house in October 2012.  Upon arriving

at the first party, Plaintiff contends that unnamed PKP members

told her that only "really attractive" female students would be

admitted to the party for free, and that "she wasn't pretty

enough to get in for free." See Compl. at ¶ 20.  Plaintiff states

---

[3] The Court notes that the Tomm Defendants, who allegedly owned
the house rented to PKP, are listed in the case caption and the
"parties" section of the Complaint, but are not named in any of
the Complaint's thirty-five counts.  Accordingly, this Court will
order Plaintiff to show cause, explaining whether Plaintiff has
any viable claims against the Tomm Defendants.

that she told she either needed to flash her breasts or pay $15
for admission. Id. at ¶ 21-22. Plaintiff decided to pay the $15
entrance fee.

At a second PKP party in October 2012, Plaintiff alleges
that an unnamed PKP member with a "blonde crew cut" came up from
behind Plaintiff and "grabbed her buttocks... then proceeded to
put his hand between D.D.'s legs, making contact with D.D.'s
vagina outside her pants" and called her a "cunt." See Compl. at
¶¶ 26-28. Plaintiff states that she responded by hitting her
assailant, who then "forcefully push[ed]" her in return. Id.
Plaintiff alleges that she reported the sexual assault to local
police officers who had arrived to shut down the party, but that
they told her to "stop talking since she had assaulted her
attacker" in response. Id. at ¶ 29. Plaintiff makes no
allegation that she reported either October 2012 incident to
representatives from Stockton University. However, Plaintiff
claims that she heard from another friend who allegedly reported
PKP that "the University could not do anything, despite the fact
that the fraternity members were Stockton University student[s],"
because PKP "was operating as an unrecognized organization." Id.
at ¶ 32.

Plaintiff also alleges that she was sexually assaulted at
the Colandrea family's house following their holiday party in
December 2015 (by a male guest referred to only as "Eric" in the

Complaint).  As described in the Complaint, Plaintiff attended the Colandrea holiday party on December 14, 2015, where "there was an abundance of underage drinking involving minors... and many Stockton University students had been invited to the party." Compl. at ¶ 37.  Plaintiff alleges that she was informed by Katie Colandrea that "Eric" had shown an interest in Plaintiff.[4]  Id. at ¶ 39.  Around 3:00 a.m. on December 15, 2015, Plaintiff contends that an intoxicated Eric "headed over to D.D. and placed his hands on her waist in a sexual manner" and stated that "she was 'beautiful.'"  Id. at ¶ 41.  In response, Plaintiff told Eric not to touch her and he "immediately removed both of his hands from her waist." Id.

Later in the early morning hours on December 15, 2015, Plaintiff accepted Katie Colandrea's offer to spend the night at the house because it was very late.  See Compl. at ¶ 43. Plaintiff states that she was laying on an air mattress on the floor of Katie Colandrea's room, when Eric, who had been sleeping on the other side of the room, approached Plaintiff and told her that "he did not want D.D. to be lonely." Id. at ¶ 45.  Although Plaintiff advised Eric that she was not lonely, "Eric began touching D.D. all over, groping and sexually assaulting her." According to Plaintiff, "Eric forcefully pulled her hair,

---

[4] The Court notes that the individual identified as "Eric" is not named as a defendant in this case.

6

ripped/tore D.D.'s shirt and bra off, and digitally penetrated
her in her vagina." Id. Plaintiff "believes she froze during the
sexual assault since she was involved in a previous sexual
assault at the Phi Kappa Phi [sic] fraternity house." Id. at ¶
46.

Plaintiff states that she escaped from the sexual assault
and told Eric "not to touch her" after Katie Colandrea "violently
awoke sick from being so intoxicated from the party earlier and
was throwing up." Compl. at ¶ 47. Plaintiff alleges that she ran
from her assailant in tears to the bathroom connected to the
bedroom, followed by Katie who was throwing up, and then "advised
Katie of the sexual assault that had just occurred." Id. at ¶ 48.
Plaintiff contends that Katie's mother, Sherie, entered the
bathroom while Plaintiff was telling Katie about the sexual
assault. Id.  Plaintiff states that Katie began throwing up again
and "Sherie made no attempt to keep D.D. from leaving the house
after she had just been sexually assaulted." Id. Around 4:00
a.m., Plaintiff gathered her belongings, left the Colandrea
house, and headed back to her dorm room on the Stockton
University campus. Id. at ¶¶ 49-50.

After returning to her dorm room, Plaintiff told her
roommate about the alleged sexual assault. See Compl. at ¶ 50.
Plaintiff claims that she reported the sexual assaults to Karen
Matsinger, Assistant Director of Counseling Services at Stockton

University, in a counseling session that following Monday. Id. In turn, Plaintiff alleges that Matsinger referred her to Laurie Dutton, Stockton University's Director of Counseling, who contacted the Stockton Police Department (the "SPD"). Id.

Plaintiff contends that Dutton and the SPD launched "a campaign of manipulation, control, and non-disclosure" to "talk D.D. out of pursuing criminal charges against her attacker." Compl. at ¶ 51. Plaintiff states that Dutton and the SPD pressed her on whether she "really wanted to press charges" and told her that doing so "wasn't good for her mental health," adding that Plaintiff "would not win" a case against her attacker. Id. at ¶ 52. Meanwhile, Plaintiff continued her counseling sessions with Matsinger, which Plaintiff describes as "a clear conflict of interest with D.D. also being an employee of the Counseling Center." Id. at ¶ 53.

On September 3, 2018, Plaintiff commenced this action against Defendants, alleging, among other things, that the sexual assaults "have had a negative and very detrimental effect on D.D.'s everyday life." Compl. at ¶ 55. Now, this matter comes before the Court upon Moving Defendants' motions to dismiss. The Moving Defendants present varying arguments in favor of dismissal, but all Defendants argue that Plaintiff untimely asserted her claims after the two-year statute of limitations had already expired.

## II. __LEGAL STANDARD__

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 662. "[A]n unadorned, the defendant-unlawfully-harmed-me accusation" does not suffice to survive a motion to dismiss. Id. at 678. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

In reviewing a plaintiff's allegations, the district court "must accept as true all well-pled factual allegations as well as all reasonable inferences that can be drawn from them, and construe those allegations in the light most favorable to the plaintiff." Bistrian v. Levi, 696 F.3d 352, 358 n.1 (3d Cir. 2012). When undertaking this review, courts are limited to the allegations found in the complaint, exhibits attached to the

complaint, matters of public record, and undisputedly authentic documents that form the basis of a claim. See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

## III. **DISCUSSION**

In their respective motions to dismiss, the Moving Defendants set forth various arguments for dismissal. Notably, all Moving Defendants argue that Plaintiff's Complaint must be dismissed because it was filed after the expiration of the two-year statute of limitations on each of Plaintiff's claims. In addition to the statute of limitations defense, Stockton argues that Plaintiff fails to adequately allege Title IX and § 1983 claims, and that Plaintiff cannot maintain tort claims against Stockton because Plaintiff failed to serve notice under the New Jersey Tort Claims Act ("TCA"). See Stockton MTD [Dkt. No. 39-1]. PKP separately argues that Plaintiff has failed to sufficiently allege vicarious liability against PKP. See PKP MTD [Dkt. No. 38]. Lastly, the Colandrea Defendants also argue that they are not specifically named in any of the Complaint's thirty-five counts and that Katie Colandrea was not properly served. See Colandrea MTD [Dkt. No. 37-3]. Based on the manner in which the

allegations are currently pled in the Complaint, the Court must rule in favor of the Moving Defendants.

### A. *Statute of Limitations (Generally)*

All Moving Defendants seek to dismiss Plaintiff's claims as time-barred under the relevant statutes of limitations. Generally, a statute of limitations is an affirmative defense not normally decided on a motion to dismiss. See Mesadieu v. City of Elizabeth, 2019 WL 2385901, at *2 (D.N.J. June 6, 2019)(citing Crump v. Passaic County, 147 F. Supp. 3d 249, 259 (D.N.J. 2015). However, "where the complaint facially shows noncompliance with the limitations period," dismissal on statute of limitations grounds may be appropriate. Id.

In this case, the applicable statute of limitations for each of Plaintiff's claims is two years. See Dique v. New Jersey State Police, 603 F.3d 181, 185 (3d Cir. 2010)(noting that New Jersey mandates a two-year statute of limitations period for personal-injury torts); Bougher v. Univ. of Pitt., 882 F.2d 74, 77–78 (3d Cir. 1989)(applying the local statute of limitations for personal injury claims to Title IX claims); Pearson v. Sec'y Dep't of Corr., 775 F.3d 598, 602 (3d Cir. 2015)(applying the local statute of limitations to § 1983 actions). Plaintiff filed her complaint on September 3, 2018; thus, any claims that accrued before September 3, 2016 would be time-barred. Below, the Court

analyzes the accrual date and applicability of the statute of limitations to each of the specific claims.

### B. *Personal Injury Claims (Statute of Limitations)*

Under New Jersey state law (which governs Plaintiff's personal injury claims), the date of accrual for a personal injury claim will generally be the date of the tortious conduct or incident resulting in the injury. See <u>Beauchamp v. Amedio</u>, 164 N.J. 111, 117 (2000). As such, the Moving Defendants contend that dismissal of Plaintiff's personal injury tort claims is warranted because these claims accrued in October 2012 and December 2015, the dates of the alleged sexual assaults.

In response, Plaintiff alleges that her claims should be tolled under the equitable doctrines of "delayed discovery" and/or "repressed memory." Under New Jersey law, the discovery rule postpones a claim from accruing if a plaintiff is not reasonably aware that she had suffered an injury or if she cannot identify whether it was the fault of the specific person (even if she was aware of the injury). See <u>Caravaggio v. D'Agostini</u>, 166 N.J. 237 (2001). As set out by the New Jersey Supreme Court, the accrual of the claim will be postponed until the "injured party discovers, or by exercise of reasonable diligence and intelligence should have discovered, that [she] may have a basis

for an actionable claim." <u>Lopez v. Swyer</u>, 62 N.J. 267, 272 (1973).

Plaintiff also argues that her claims should be tolled under the Child Sexual Abuse Act ("CSAA"), N.J.S.A. 2A:61B-1, et seq., which provides special protections against the statute of limitations to plaintiffs who were under the age of 18 years at the time of their sexual abuse. N.J.S.A. 2A:61B-1(a)(1). That statute provides that a cause of action for sexual abuse, defined as "an act of sexual contact or sexual penetration between a child under the age of 18 years and an adult," accrues "at the time of reasonable discovery of the injury and its causal relationship to the act of sexual abuse." N.J.S.A. 2A:61B-1(a)(1) & (b). In addition, the CSAA provides that the statute of limitations may be further tolled "because of the plaintiff's mental state, duress by the defendant, or any other equitable grounds." N.J.S.A. 2A:61B-1(c). The New Jersey legislature passed the CSAA in recognition of "the unique nature" of childhood sexual abuse. <u>See</u> <u>Schmotzer v. Rutgers Univ.-Camden</u>, 2017 WL 2691415, at *8 (D.N.J. June 21, 2017). However, Plaintiff's Complaint specifically states that she was already eighteen years old at the time of the first incident in 2012. <u>See</u> Compl., at ¶ 16 ("The first sexual harassment/assault occurred in October 2012 when the Plaintiff was eighteen (18) years old"). Therefore, this Court will not apply the CSAA to toll the statute of limitations.

Although Plaintiff asserts that circumstances, such as
mental anguish, prevented her claims from accruing, Plaintiff's
allegations undercut her argument and demonstrate that she was
"reasonably aware that she had suffered an injury."  To that
point, Plaintiff's pleadings support a finding that she was aware
that she had been sexually assaulted at the time of the alleged
incidents.  Following the alleged sexual assault in October 2012,
Plaintiff claims that she immediately told a police officer that
she had been sexually assaulted.  Following the December 2015
incident, Plaintiff states that she immediately told Katie
Colandrea and her roommate, and that she told Matsinger, Dutton,
and the SPD within the next few days.

   Because Plaintiff's pleadings facially show that she knew
she had been the victim of sexual assaults at the time of the
incidents, the Court is constrained to find that the statute of
limitations for Plaintiff's personal injury claims expired in
October 2014 and December 2017, respectively.

### C. *Personal Injury Claims (Tort Claims Act)*

   In addition to the statute of limitations point, Stockton
also argues that Plaintiff's personal injury claims against the
university must be dismissed for failure to meet the TCA's notice
of claim requirement.  The TCA imposes certain limitations on the
tort liability of a New Jersey public entity and of a New Jersey

public employee. <u>See</u> N.J.S.A. 59:1-2; N.J.S.A. 59:2-1; N.J.S.A. 59:3-1. Of relevance to this action, the TCA precludes actions against a public entity or its employees when the plaintiff has failed to comply with its notice of claim provision. <u>See</u> <u>Coreas v. McGuire</u>, 2010 WL 1849939, at *2 (D.N.J. May 7, 2010)(citing N.J.S.A. 59:8-3; N.J.S.A. 59:8-8). Indeed, "[a] suit will be dismissed if the claimant did not provide a notice of claim to the entity within ninety days of the 'accrual of a cause of action.'" <u>Davis v. Twp. of Paulsboro</u>, 371 F.Supp.2d 611, 618 (D.N.J. 2005).

In this matter, Plaintiff has neither addressed the merits of Stockton's argument on this point nor claimed that she has complied with the TCA. Thus, even if they were not barred by the statute of limitations, the Court would dismiss the personal injury claims against Stockton for failure to comply with the TCA's notice requirements. As such, the Court notes that any effort to amend the complaint to address that issue would be futile, because Plaintiff's failure to file the mandatory notice of claim bars her from proceeding with her personal injury tort claims against Stockton.

### D. *Title IX and § 1983 Claims*

Stockton argues that Plaintiff fails to state a claim under Title IX and Section 1983, and that any possible claims are

barred by the statute of limitations. The United States Supreme Court has held that Title IX "implies a private right of action to enforce its prohibition on <u>intentional</u> sex discrimination." <u>Jackson v. Birmingham Bd. of Educ.</u>, 544 U.S. 167, 173 (2005)(emphasis added). To that end, "retaliation against a person because that person has complained of sex discrimination is another form of intentional sex discrimination encompassed by Title IX," because retaliation is "by definition, an intentional act." <u>See</u> <u>id.</u> at 173-174. Meanwhile, to state a claim under § 1983, Plaintiff must allege that the school purposefully discriminated against her and treated her differently than others similarly situated. <u>See</u> <u>Keel v. Delaware State Univ. Bd. of Trustees</u>, 2019 WL 494621, at *7 (D. Del. Feb. 8, 2019).

A private Title IX and § 1983 claim may also exist against a public school in cases of student-on-student harassment, but "only where the funding recipient is deliberately indifferent to sexual harassment, of which the recipient <u>has actual knowledge</u>, and that harassment is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." <u>Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.</u>, 526 U.S. 629, 650 (1999)(emphasis added). Indeed, damages may not be recovered unless a school official "who at a minimum has authority to institute corrective measures on the [school's]

behalf has actual notice of, and is deliberately indifferent" to the alleged misconduct. See Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 277 (1998).

"Deliberate indifference claims impose a significant burden on the plaintiff and consequently rarely proceed beyond a motion to dismiss." Saravanan v. Drexel Univ., 2017 WL 5659821, at *7 (E.D. Pa. Nov. 24, 2017). Under Title IX, deliberate indifference requires "a response (or failure to respond) that is clearly unreasonable in light of the known circumstances." Keel, 2019 WL 494621, at *6. Furthermore, the Supreme Court has held that it would "frustrate the purposes" of Title IX to permit a damages recovery "based on principles of respondeat superior or constructive notice, i.e., without actual notice" to a school official. See Gebser, 524 U.S. at 285.

In this case, it appears that Plaintiff's Title IX and § 1983 causes of action are based on an alleged failure to take actions against PKP, PKP's members, the individual identified as "Eric," and for allegedly dissuading Plaintiff from pursuing

claims.[5] However, Plaintiff's claims would have accrued at the time she "knew or should have known" that Stockton was acting with deliberate indifference, meaning all of her claims would be time-barred.

First, Plaintiff's Complaint insinuates that PKP's generally inappropriate behavior was well-known around campus while she was a student. Thus, Plaintiff tacitly acknowledges that she was aware of Stockton's alleged deliberate indifference much more than two years before she filed suit. Regardless, Plaintiff never alleges that she reported either of the October 2012 incidents at the PKP, leaving Stockton without any "actual notice." Second, Plaintiff states that she informed Stockton about the sexual assault at the Colandrea household the Monday immediately following the December 15, 2015 incident. Plaintiff's Complaint suggests that Stockton officials almost immediately dissuaded Plaintiff from pursuing a claim. These actions mean that Plaintiff knew in December 2015 that Stockton would not be addressing her claims. As such, Plaintiff's Title IX or § 1983

_____

[5] Plaintiff also claims that in September 2015, Matsinger "apprised D.D. of some non-disclosable medical information involving another Stockton University student" and that the release of this medical information "was not only illegal but completely unnecessary and detrimental to the mental health of D.D." Compl., at ¶¶ 33-34. Plaintiff does not specify the nature of that information, why it was detrimental to her health, or how it relates to her other claims. Regardless, the statute of limitations for Title IX and § 1983 claims based on that incident would have expired in September 2017.

claims would have accrued more than two years prior to commencement of this lawsuit and would, thus, be time-barred.

### E. *Vicarious Liability (Against PKP)*

In her Complaint, Plaintiff alleges that PKP, the national fraternity organization, is liable for the tortious conduct of PKP members under a theory of vicarious liability or <u>respondeat superior</u>. In its Motion to Dismiss, PKP argues that it cannot be found vicariously liable for the tortious acts of three unnamed PKP members because Plaintiff has not alleged any agency relationship or duty of care.

"Whether a person owes a duty of reasonable care toward another turns on whether the imposition of such a duty satisfies an abiding sense of basic fairness under all of the circumstances in light of considerations of public policy. That inquiry involves identifying, weighing, and balancing several factors—the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution." <u>Hopkins v. Fox & Lazo Realtors</u>, 132 N.J. 426, 439 (1993)(internal citations omitted). When conducting this analysis, [t]he foreseeability of the harm involved is one of the many considerations in assessing whether a duty is owed." <u>Peguero v. Tau Kappa Epsilon Local Chapter</u>, 439 N.J. Super. 77, 89 (App. Div. 2015). Additionally,

foreseeability is "based on the defendant's knowledge of the risk of injury." Id.(internal citations omitted).

In Peguero, the Superior Court of New Jersey, Appellate Division, found that a fraternity was not liable for injuries sustained when a guest at a party fired a gun in the backyard of the fraternity house. In that case, the Superior Court found that it was not reasonably foreseeable that an "unknown assailant" would bring a gun to the party, drink heavily, get into an altercation, fire the handgun, and injure someone. See id. at 93. However, in dicta, the court opined that it was not suggesting that "a fraternity or its members could not be liable for criminal or other dangerous behavior that occurs during the course of a party hosted by fraternity members." Id. at 93. The Superior Court added that it was "cognizant of the tragic consequences of hazing, excessive drinking, sexual assaults, and other harmful acts that have occurred at fraternity houses or at other fraternity events." Id.

Under somewhat similar circumstances, other courts have found that national fraternities are not liable for the tortious conduct of their members. Recently, the Middle District of Tennessee found that the national organization of the Pi Kappa Alpha fraternity was not liable for an alleged sexual assault by a fraternity member. Doe v. Andrew, 2017 WL 3443598, at *13-14 (M.D. Tenn. Aug. 9, 2017). In relevant part, the court stated:

20

"The Court concludes Doe's injuries and the manner in which they occurred were not reasonably foreseeable so as to give rise to a special relationship with Doe. Certainly, a sexual assault at a fraternity party—or any party—is foreseeable, in the sense that it does not defy the rules of logic and common sense to think that it might happen. But foreseeability for purposes of identifying duties under tort law requires more than that. It requires at least <u>reasonable</u> foreseeability—a foreseeability built on something more than mere possibilities."

...

"Here, however, there is no evidence the Chapter had notice of any sexual misconduct by any Chapter member, including Andrews. The Court agrees with the Chapter that knowledge of allegations of sexual misconduct at a few other Pi Kappa Alpha chapters was not sufficient to raise the possibility of sexual assault to such reasonable foreseeability as to give rise to a duty by the Chapter to take additional specific precautions to protect its guests, such as Doe."

<u>Id.</u> (emphasis in original); <u>see also</u> <u>Ostrander v. Duggan</u>, 341 F.3d 745, 749 (8th Cir.2003)(finding that the defendant fraternity had no duty to protect plaintiff from a sexual assault because the plaintiff "adduced no evidence that would cause a reasonable person to foresee injury to herself or other female visitors arising from sexual misconduct at the [fraternity] premises"); <u>Rogers v. Sigma Chi Int'l Fraternity</u>, 9 N.E.3d 755, 765 (Ind.Ct.App.2014) (granting summary judgment to the national Sigma Chi fraternity for what it deemed to be an "unforeseeable" criminal assault of a party attendee by another guest); <u>Colangelo v. Tau Kappa Epsilon Fraternity</u>, 517 N.W.2d 289, 292 (1994) (finding that "the national fraternity owed no duty to supervise

the local chapter's actions for the protection of third parties"
for injuries arising from a drunk driving accident).

Although Plaintiff argues that PKP's national organization
was on constructive notice of sexually inappropriate conduct at
the Stockton chapter because PKP "has a systematic problem of bad
acts and underage drinking and either allows, encourages, or
supports the continued bad acts of its members, associates, and
associate chapters," Pl.'s Opp. Br. at 9, this Court cannot reach
that conclusion based on the pleadings.  In this case,
Plaintiff's Complaint did not allege that the PKP national
organization was on notice of any prior incidents involving
sexual assault at the Stockton PKP fraternity house.  Plaintiff
has also not alleged that PKP had any specific knowledge that the
unnamed PKP members, or other fraternity members, posed a risk to
sexually assault female party guests.

In Plaintiff's Brief in Opposition to the MTD, Plaintiff
alleges for the first time that call logs from the Galloway
Township Police indicate 59 calls to the Stockton PKP house since
2008, with three calls for "sexual assault/attempts."  See Pl.'s
Opp. Br., at 10.  However, of the three police responses to
sexual assaults at the PKP house, two occurred in 2017 and 2018;
incidents that occurred after Plaintiff's alleged sexual
assault/harassment have no bearing on foreseeability in this
case.  Plaintiff's Brief in Opposition also attempts to argue

22

foreseeability by referencing various PKP chapters around the country that lost university recognition. See id. at 7-10. However, of the 15 examples listed, 12 of them occurred after 2012, and none of the three before that date involved sexual assault. Furthermore, these allegations were not asserted in the Complaint and Plaintiff may not amend her Complaint through a response to a motion to dismiss.

Therefore, if the Court had not dismissed the claims against PKP on statute of limitations grounds, dismissal would have still been warranted for failure to state a claim under a vicarious liability theory.

### F. *Claims against the Colandrea Defendants*

The Colandrea Defendants move for dismissal, arguing that Plaintiff's Complaint does not specify any claims against them. This Court agrees. Although included in the case caption, the Complaint lacks any specific claims against the Colandrea Defendants. Indeed, the Colandrea Defendants are not mentioned in any of the Complaint's thirty-five counts. As dismissal is warranted for failure to state a claim, the Court need not resolve whether Katie Colandrea was properly served. However, if Plaintiff chooses to name Katie Colandrea as a defendant in an amended complaint, Plaintiff must show cause, in the form of a

declaration or certification, directly addressing what steps were taken to properly serve Katie Colandrea.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Defendants' Motions to Dismiss will be **GRANTED** and Plaintiff's claims against the Moving Defendants will be **DISMISSED**, without prejudice.  Plaintiff must show cause within fourteen (14) days, indicating what claims, if any, she can assert against the Tomm Defendants, otherwise those claims will also be dismissed without prejudice.  Plaintiff shall be permitted thirty (30) days to file an amended complaint, addressing the deficiencies set forth herein, to the extent possible.  An appropriate Order shall issue on this date.

DATED: July 26, 2019

<u>s/Renée Marie Bumb</u>
RENÉE MARIE BUMB
UNITED STATES DISTRICT JUDGE
